Rudolfo LOPEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–96–00343–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 8, 2001.

Discretionary Review Granted
Feb. 6, 2002.

Arthur A. Estefan, San Antonio, Jacquelyn L. Snyder, Adkins, for Appellant.

Matthew W. Paul, State's Prosecuting Attorney, Jeffrey L. Van Horn, First Assistant State's Attorney, Austin, Daniel Thornberry, Assistant Criminal District Attorney, San Antonio, for Appellee.

Sitting: TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, and KAREN ANGELINI, Justice.

Opinion by ALMA L. LÓPEZ, Justice.

Lopez was convicted of aggravated sexual assault of a child and indecency with a child, and sentenced to 12 years in prison on each count. On appeal, Lopez argued he should have been permitted to impeach the child (hereinafter "P.M.") with evidence that P.M. had falsely accused his mother of physical abuse. We reversed and ordered that the evidence be admitted.[1] The court of criminal appeals vacated and remanded our first opinion,[2] and has subsequently reversed our second opinion [3] concerning issues dealing with

---

1. *Lopez v. State,* No. 04–96–00343–CR (Tex. App.—San Antonio 1997) (not designated for publication).

2. *Lopez v. State,* No. 97–1193 (Tex.Crim.App. 1998) (not designated for publication).

3. *Lopez v. State,* 989 S.W.2d 402 (Tex.App.— San Antonio 1999) (not designated for publication), *rev'd,* 18 S.W.3d 220 (Tex.Crim.App. 2000).

the right of confrontation and evidence rule 608(b). This most recent majority opinion held:

Since the evidence Lopez sought to admit was inadmissible under Rule 608(b), and the Confrontation Clause does not mandate its admissibility, we conclude the trial court properly refused to allow admission of the evidence.

*Lopez v. State*, 18 S.W.3d 220, 226 (Tex. Crim.App.2000). The court of criminal appeals remanded the case for our consideration of appellant's second point of error. Both sides elected to submit this matter on their original briefs.

In his second point of error, Lopez complains that the trial court committed reversible error in preventing his counsel from attempting to impeach P.M. with a prior inconsistent statement. Lopez wanted to introduce evidence that P.M. had two years earlier falsely complained to the Texas Department of Human Services that his mother had thrown him against a steel washer. P.M. had also stated that his mother always hit him. The department investigated and ultimately closed the case and ruled out abuse. The file also shows, however, that "the likelihood of maltreatment is moderate" and that the case was closed because the mother was seeking counseling. *Id.* at 225.

Appellant argues that had counsel been permitted to inquire into this report, and had P.M. admitted to making the statement, he would have admitted to lying about a similar allegation, and this would have a bearing on P.M.'s credibility in this case. Conversely, he argues that had P.M. denied making the prior allegation against his mother, the report itself would have become admissible. However, the court of criminal appeals pointed out in its opinion, "the prior accusation was never shown to

be false." *Lopez*, 18 S.W.3d at 225. The court of criminal appeals commented on the inconclusiveness of the report:

This could simply indicate a lack of evidence to prove the allegation at that time, or an administrative decision that, despite the allegation's validity, the parties would best be served by closing the case.

In addition, the allegation that [P.M.]'s mother had physically abused him by throwing him against a washing machine has almost nothing in common with [P.M.]'s accusing Lopez of forcing [P.M.] to perform oral sex on Lopez. Without proof that the prior accusation was false or that the two accusations were similar, the evidence fails to have any probative value in impeaching [P.M.]'s credibility in this case.

*Id.* at 225–26.

### PREDICATE TO IMPEACHMENT

■■■ Before a witness may be impeached with a prior inconsistent statement, the party offering the impeaching testimony must establish that the prior statement was made by the witness whom the party is now trying to impeach. *See* TEX.R.CRIM. EVID. 612(a);[4] *Bigby v. State*, 892 S.W.2d 864, 886 (Tex.Crim.App.1994). To lay such a predicate, an attorney must ask the witness if he made the contradictory statement at a certain place and time and to a certain person. *See Huff v. State*, 576 S.W.2d 645, 647 (Tex.Crim.App.1979) (discussing proper predicate for impeachment by prior inconsistent statement). If the witness denies making the statement, extrinsic proof may be admitted to prove the statement. *Id.* If he admits the statement, no extrinsic evidence is allowed. *Id.; see* TEX.R.CRIM. EVID. 612(a). Because this rule is designed to give the witness an

---

**4.** Presently rule 613(a).

opportunity to explain prior inconsistencies, the opposing party must provide the witness enough information to explain the prior statement or to admit or deny it. *See McGary v. State*, 750 S.W.2d 782, 786 (Tex.Crim.App.1988) (explaining reason for predicate requirement).

 The State argues that Lopez's counsel did not lay a proper predicate, specifically, she did not tell P.M. the contents of the report which allegedly contained his prior statement. Furthermore, counsel also did not afford P.M. the opportunity to admit, explain, or deny the alleged statement. At the point where counsel may have been poised to do so, however, the State's attorney objected and the discussion at the bench was not recorded. Back on the record, the line of questioning changed to another topic. The court later stated for the record that it reviewed the department's records and found nothing relevant to this case. Under the circumstances, it would appear that the State's objection was sustained and appellant's counsel was directed not to proceed further with the impeachment attempt. We cannot agree that the interruption caused by the State's objection would also neutralize any error the court may have made in ruling the testimony inadmissible.

 Moreover, when the trial court denies a defendant the opportunity to question a witness for the State in the presence of the jury about an entire subject matter that might have shown he lacked credibility, such as malice, ill will, motive, or bias, defense counsel preserves error by stating the subjects on which she intends to question the witness. *See Virts v. State*, 739 S.W.2d 25, 29 (Tex.Crim.App.1987); *see also Recer v. State*, 821 S.W.2d 715, 717 (Tex.App.—Houston [14th Dist.] 1991, no pet.)(finding appellant preserved error when record clearly showed that appellant's counsel wanted to question complainant further about extent of complainant's relationship with appellant's husband to establish bias, ill will, and animus towards appellant).

### MOTIVE IS NOT A COLLATERAL MATTER

 Alternatively, the State argues that the attempted impeachment was improper because the projected evidence dealt with a collateral matter. The general rule is that a party is not entitled to impeach a witness on a collateral matter. "The test as to whether a matter is collateral is whether the cross-examining party would be entitled to prove it as a part of his case tending to establish his plea." *Ramirez v. State*, 802 S.W.2d 674, 675 (Tex.Crim.App.1990) (quoting *Bates v. State*, 587 S.W.2d 121, 133 (Tex.Crim.App. 1979)).[5]

 P.M. testified that Lopez encouraged him to perform oral sex on Lopez. According to the record, there were no other witnesses to corroborate the testifying witness's version of what occurred. Thus, it was critical to the defense to impeach the credibility of the complaining witness. The prior statement made to the Texas Department of Human Services caseworker has not met the strict admission standards of 608(b). *See Lopez*, 18 S.W.3d at 226. A majority on the court of criminal appeals has already scrutinized the report appellant sought to use for impeachment purposes and found it to be

---

5. An exception to the general rule that a party is not entitled to impeach a witness on a collateral matter exists where a witness has left a false impression concerning a matter relating to his or her credibility. In such a case, the opposing party is allowed to correct that false impression. *Ramirez*, 802 S.W.2d at 676. However, Lopez does not argue that the exception applies.

decidedly inconclusive on whether the witness had lied two years earlier. *See id.* at 225 (majority op., Keasler, J.) & 227–28 (concurring op., Johnson, J.). That preliminary assessment is, respectfully, *dicta.*

It is, nevertheless, essential to the administration of justice that we continue to take a case-by-case approach to determining the admissibility of evidence of prior false accusations. Accusations of sexual misconduct, particularly in the area of parent-child relationship and child care situations, can be tossed like a grenade into an existing dispute for purposes of leverage. With few witnesses, the accusations can be easy to make and difficult to disprove.

■ A party may always attack a witness's credibility by cross-examination that tends to reveal biases, prejudices, or ulterior motives affecting the witness's testimony. *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Koehler v. State,* 679 S.W.2d 6, 9 (Tex. Crim.App.1984). The motive operating on a witness's state of mind while testifying is not a collateral matter. "When the evidence shows bias or a motive for the witness to testify untruthfully, there is an exception to the prohibition on cross-examination or extrinsic evidence concerning a witness's specific instances of conduct." *Sparks v. State,* 943 S.W.2d 513, 517 (Tex. App.—Fort Worth 1997, pet. ref'd).

It is undisputed that P.M. had a lonely and difficult childhood. The excluded report demonstrated that his mother and the case worker recognized that he frequently lied to get attention and that his lying interfered with his ability to make friends. Both the excluded TDHS report and the report which led to Lopez's indictment arose from P.M.'s initial contact with a school counselor, who referred these matters to appropriate investigative authorities.

As we stated in our previous opinion, the excluded TDHS report, when coupled with the appellant's wife's testimony concerning how needy P.M. was for familial love and affection, P.M.'s strong desire to be adopted by appellant and his wife, and P.M.'s disappointment or sense of rejection when told that was not possible, all would have been helpful to the jury to show a possible motive for testifying untruthfully. *See Lopez,* 989 S.W.2d at 407.

After successfully excluding the report, the prosecutor in this case made P.M.'s credibility the focus of her closing argument, stating:

> I talked to you, initially, about the difficulty in these types of cases and the subtleties and nuances, and the lack of physical evidence that you can take back with you and look at and touch and feel.
>
> That is what makes these cases so difficult. These cases revolve around the words of children. These cases revolve around the credibility of the child who is making the accusations.

The prosecutor then went on to describe P.M.'s testimony concerning the sexual misconduct accusations and posed the rhetorical question:

> Ladies and gentlemen, what would motivate a child to talk about that? What would motivate a child to go to the school counselor and make the initial outcry? What would motivate a child to persist in his accusations for the three years it has taken this case to come to trial, if it was a fabrication, if it was done for spite, if it was done to get back at someone? ... He responded honestly, he responded with integrity and he told you the truth.

The prosecutor compared the credibility of P.M. against the credibility of the defendant's wife, "You heard her testimony, ladies and gentlemen, and you judge her credibility. You judge what she had to

say. You compare her credibility against the credibility of [P.M.].... These cases, ladies and gentlemen, boil down to credibility, to believability and to motivation."

The trial court denied the jury the opportunity to assess P.M.'s credibility on the stand against a third-party's investigative report which called P.M.'s credibility into serious question two years earlier. The investigation was made in response to P.M.'s initial complaint to a school counselor, who in turn, filed this referral:

> [P.M.] smells—he never bathes. "[Mother] hits me in the back with her hand & beats me." A couple of days ago—[mother] hit me & threw me against a "still washer." [sic] She also knocked a tooth loose but it is O.K. now. "[Mother] told me not to talk with schools—because they are too nosey—but I need to tell someone." Child complains he is hungry—"[mother] doesn't feed me." Child stated "I don't like to take work home from school because if mom sees my bad grades—she will hit me." Child is always stating, "[Mother] hits him."

The Initial Assessment Worksheet and Conclusion (Report), which appellant attempted to use for purposes of impeachment, contained several relevant references to P.M.'s penchant for lying to get attention:

> 1. Identity Element: How do the parents view (label) the child? Mother—stays to himself, kids make fun of him, comes home crying, makes up stories, "I know that he's unhappy".
>
> 6. Parenting Element: What are the parenting practices in this family? Mother provides inconsistent basic care for [P.M.], i.e., giving him a bath, she says that he flat refuses to take a bath. The child is very provocative.... She is very frustrated with his unending problems in school, she says that he is constantly making up stories.... Mother says that she encourages him to make friends, however, he explains that he loses friends quickly because he lies to them.
>
> 11. Nature Element: What surrounding circumstances accompany the alleged maltreatment? The allegations were that the mother threw the child against a steel washer, the mother had no idea what [P.M.] was talking about. The child did not have any injuries and also did not have any injuries during the time of the complaint.... The child states that the mother always hits him, however, there is no verification of any injuries.

Complainant's testimony at trial was uncorroborated evidence against Lopez. It was extremely important to the State's case. It was equally important that appellant be able to fully cross-examine the State's chief witness. The testimony appellant's counsel sought to elicit on cross-examination was not cumulative. We were not present to assess the demeanor of either P.M. or the appellant, and can only conclude that the jury should have had the benefit of all relevant evidence, including evidence of motive or bias on the part of P.M. before assessing the credibility of P.M. and Lopez. Appellant's second point of error is sustained. The judgment of the trial court is reversed and remanded for a new trial.

Dissenting opinion by: KAREN ANGELINI, Justice.

I respectfully dissent.

In his second issue, Lopez complains that the trial court erred in preventing him from impeaching the child complainant with a prior inconsistent statement. Specifically, Lopez argues that if he had been permitted to ask the complainant about the false accusation of physical abuse he made

against his mother in a report to the Department of Protective and Regulatory Services ("the Department"), the complainant would have either admitted or denied making the accusation. According to Lopez, if the complainant admitted making the prior statement, he would have admitted to lying about an allegation similar to the one he was making in this case. On the other hand, if the complainant denied making the prior statement, then the Department's report would have been admissible under Rule of Evidence 613. Under either scenario, the complainant's credibility would be called into question.

A witness's prior inconsistent statement is admissible for purposes of impeachment. Tex.R. Evid. 613(a); *Staley v. State*, 888 S.W.2d 45, 49 (Tex.App.—Tyler 1994, no pet.). To properly admit evidence of a prior inconsistent statement, the questioning attorney must lay the proper predicate. *See* Tex.R. Evid. 613; *Fields v. State*, 966 S.W.2d 736, 741 (Tex.App.—San Antonio 1998) *reversed on other grounds*, 1 S.W.3d 687 (Tex.Crim.App.1999). And, it is fundamental that the prior statement be inconsistent with the witness's trial testimony. *See* Tex.R. Evid. 613(a); *Alvarez–Mason v. State*, 801 S.W.2d 592, 595 (Tex.App.—Corpus Christi 1990, no pet.). Further, it is improper to impeach a witness on an immaterial or collateral matter. *See Flannery v. State*, 676 S.W.2d 369, 370 (Tex.Crim.App.1984); *Garza v. State*, 18 S.W.3d 813, 822 (Tex.App.—Fort Worth 2000, pet. ref'd).

Applying the law to the facts of this case, I would find Rule 613(a) inapplicable because the complainant's trial testimony was not inconsistent with the prior statement he made to the Department. Furthermore, even if Rule 613(a) did apply, Lopez was attempting to impeach the witness on a collateral matter.

### Prior Inconsistent Statement

Remarkably, Lopez fails to point out in his brief what statement the complainant made at trial that was inconsistent with the accusation of abuse he had previously made against his mother.[1] A review of the record, however, indicates that Lopez is most likely referring to the following exchange which took place during cross-examination of the complainant:

Q: You have lied about little things?

A: Yes.

Q: And you have lied about big things?

A: No.

Q: Do you remember in 1991, February 16, 1991?

Ms. Green [prosecutor]: Objection, your Honor. May we approach?

An unrecorded bench conference followed and Lopez's attorney moved on to another line of questioning. Later, rather than making a formal bill of exceptions, Lopez's counsel stated on the record that she "had intended to elicit some statements that should be contained within the DHS report and impeach the child with a prior inconsistent statement regarding an incident that had occurred where he had made a false complaint to DHS regarding his mother throwing him against a washer".

Presumably, then, Lopez is arguing that the complainant's statement, in court, that he has not lied about "big things" is inconsistent with the prior false accusation to the Department that his mother had abused him.

The manner in which Lopez sought to impeach the complainant for making a prior inconsistent statement, in my opinion, simply does not fit into the framework of

---

**1.** The majority opinion likewise fails to articulate the inconsistency.

Rule 613(a). For the prior statement to be admissible under Rule 613(a), the witness would first have to make a statement, in court, that is inconsistent with a prior statement. Because the two statements are·inconsistent, both cannot be true and, therefore, the witness's credibility is called into question. Therein lies the impeachment value of Rule 613(a). To fit within the framework of Rule 613(a), the complainant, in this case, would have to have made some statement in court that was inconsistent with the prior statement he made in the report to the Department. An example would be if the complainant testified in court that he had never accused his mother of abusing him. Upon laying the proper predicate, Lopez would be able to impeach the complainant by offering the prior statement the complainant had made to the Department accusing his mother of physically abusing him.[2] These are truly inconsistent statements, only one of which can be true, and which, because of the inconsistency, call the complainant's credibility into question. A review of typical cases applying Rule 613(a) demonstrate that the rule applies when a witness changes his or her story at trial after having made a prior contrary statement having some bearing on the facts in issue. *See, e.g., Joseph v. State,* 960 S.W.2d 363 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd); *Irizarry v. State,* 916 S.W.2d 612 (Tex.App.—San Antonio 1996, pet. ref'd); *Staley v. State,* 888 S.W.2d 45 (Tex.App.—Tyler 1994, no pet.).

But this is not the case here. The complainant has not changed his story at all. In court, the complainant stated he did not lie about "big things." In his prior statement to the Department, he stated that his mother had physically abused him. Even if this accusation was false, the two state-

ments are not inconsistent. If we assume, for arguments's sake, that the Department found the accusation against the mother to be unfounded, we would simply be left with the complainant's in-court statement—"[I] have not lied about big things"—and his out-of-court statement, which in essence would be—my mother abused me, but the Department found it to be a false allegation. These statements are not inconsistent as contemplated by Rule 613(a).

### Collateral Matters

Lopez's attempt to impeach the complainant with his prior statement accusing his mother of abusing him was also impermissible because it amounted to an attempt to impeach on a collateral matter. *See Flannery* 676 S.W.2d at 370 (holding it is improper to impeach a witness on an immaterial or collateral matter). I cannot agree with the majority's opinion that the prior court of Criminal Appeals holding in this regard was merely dicta. *See Lopez v. State,* 18 S.W.3d 220 (Tex.Crim.App. 2000). Nor can I agree with the majority's application of *Sparks v. State,* 943 S.W.2d 513 (Tex.App.—Fort Worth 1997, pet. ref'd) where the court applies Rule 613(b) to allow impeachment of a witness to show the witness is biased. Lopez has not urged the applicability of Rule 613(b).

In its earlier opinion in this case, the Court of Criminal Appeals considered whether the Confrontation Clause required the admission of the complainant's prior accusation of physical abuse against his mother. The court balanced the probative value of the evidence against the risk of its admission and found it inadmissible because it did not serve the purpose of impeaching the complainant's credibility. The court's holding that the evidence had

---

**2.** The prior statement would not be admissible, however, if the attempt to impeach was on a collateral matter. See the discussion below.

no impeachment value was essential to its opinion and it set forth two reasons for this holding. First, the prior accusation was never shown to be false.[3] Secondly, the court reasoned that the complainant's allegation of physical abuse "had almost nothing in common with [the complainant's] accusing Lopez of forcing [him] to perform oral sex on Lopez."

For the same reasons stated by the court of Criminal of Appeals, I would find that Lopez's attempt to impeach the complainant pursuant to Rule 613(a) was an attempt to impeach on a collateral matter. The prior accusation was never shown to be false and it had nothing to do with the allegation of sexual misconduct the complainant made against Lopez.

For the above reasons, I dissent and would affirm the trial court's judgment.

**3.** As the Court of Criminal Appeals stated, the record indicates the Department closed its file because the mother was seeking counseling. According to the Court, this might mean there was a lack of evidence to prove the abuse at the time or that an administrative decision was made that the parties would best be served by closing the case. *Lopez,* 18 S.W.3d at 225–26.